UNITED STATES DISTRICT COURT    SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas

**ENTERED**
May 25, 2021
Nathan Ochsner, Clerk

| | | |
|---|---|---|
| Douglas Petersen, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| *versus* | § | Civil Action H-20-4243 |
| | § | |
| Montgomery County, Texas, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## Opinion on Dismissal

1.    *Background.*

On July 31, 2019, Brian Petersen and a Conroe police officer – who was impersonating a 14 year-old – were communicating on a dating application. They agreed to meet the next day.

On the afternoon of August 1, 2019, when Brian Petersen went to the meeting place, Conroe police arrested and charged him with second degree solicitation of a minor. The officers took him to the Montgomery County jail.

Southwest Correctional Medical Group, Inc., and Wellpath Recovery Solutions, LLC, contract with Montgomery County to give medical care at the jail.

Upon arriving, emergency medical technician Bridgitt Johnson – who worked for Wellpath – screened Brian Petersen.

On the night of August 2, 2019, Brian Petersen was released.

On the night of August 4, 2019, Brian Petersen killed himself.

On December 14, 2020, Douglas and Pamela Petersen – individually and as the administrators of Brian Petersen's estate – sued Bridgitt Johnson, Southwest Correctional, and Wellpath Recovery: (a) under 42 U.S.C. § 1983; (b) under 42 U.S.C. § 1985; (c) for malpractice; (d) for negligence; and (e) for gross negligence. Johnson, Southwest, and Wellpath have moved to dismiss for failure to state a claim. They will prevail.

2.   *Section 1985.*

Because the Petersens did not respond to the Wellpath defendants' arguments to dismiss this claim, they have abandoned it. This claim was lazily over-pleaded without factual support. The Petersens' section 1985 claim will be dismissed.

3.   *State Law Claims.*

To state a claim for medical care liability and negligence, the Petersens must have adequately pleaded facts that: (a) the Wellpath defendants breached the required standard of care, and (b) this breach caused Brian Petersen's suicide.[1]

The Petersens say that the Wellpath defendants had a duty to "correctly identify suicidal ideations and provide the proper treatment." They insist that the Wellpath defendants breached this duty by:

a.   "Failing to consult a specialist;"

b.   "Abandoning Brian;"

c.   "Failing to monitor Brian's condition;"

d.   "Failing to diagnose Brian's condition properly;"

e.   "Failing to treat Brian's condition properly;"

f.   "Failing to provide the medical and nursing care reasonably required for Brian's condition;"

g.   "Choosing to not evaluate Brian correctly;"

h.   "Choosing not to send Brian to a hospital or expert for further evaluation and treatment;" and

i.   "Choosing not to ... examine at all or to not properly examine [Brian]."

---

[1] *Methodist Hosp. v. German*, 369 S.W.3d 333, 338 (Tex. App.—Houston [1st Dist.] 2011).

They argue that this lack of care caused Brian Petersen to kill himself and, if he had received any care, it "would have made the suicide less likely."

The Petersens have pleaded these claims largely with legal conclusions. They believe that the Wellpath defendants' duty is to be perfect always in giving care by correctly diagnosing all illnesses and conditions. If the court were to allow this argument, then the entire medical field would collapse as no sane person would practice medicine for fear of being sued every day. The Wellpath defendants' duty is to act as a reasonable medical provider in jail, and it is clear that the most reasonable medical care is not perfect. Attempting to plead an outrageous and overly heightened duty does not state a claim.

The Petersens have pleaded no facts that the Wellpath defendants breached a duty. Merely listing legal conclusion after legal conclusion is inadequate.

The general rule in Texas is that suicide is a superceding cause that breaks the chain of causation.[2] Baldly saying more care would have made the suicide less likely does not plead causation.

The Petersens' malpractice, negligence, and gross negligence claims will be dismissed.

4. *Section 1983.*

The Petersens made no effort to differentiate between the defendants in pleading their section 1983 claim. The court has put forth its best attempt at doing so.

A. *Bridgitt Johnson.*

To state a section 1983 claim against Johnson, the Petersens must have adequately pleaded facts that: (a) Brian Petersen's constitutional rights were violated, and (b) that violation was caused by Johnson's acting under the color of law.[3]

---

[2] *Exxon Corp. v. Brecheen*, 526 S.W.2d 519, 523 (Tex. 1975).

[3] *West v. Atkins*, 487 U.S. 42, 48 (1988).

The Petersens say that Johnson did not "adequately evaluate Brian and properly route him to the proper care" violating his rights under the 4th, 5th, and 14th Amendments.

The Petersens have pleaded no facts of what was inadequate about Johnson's care and evaluation. Disagreements over the quality of care are not automatically constitutional violations. Merely being upset with the ultimate outcome is not adequate to plead a constitutional violation. Similar causation issues exists here as with the state law claims. The Petersens have also pleaded no facts that Johnson was acting under the color of law.

The Petersens' section 1983 claim against Johnson will be dismissed.

B.　*Southwest Correctional and Wellpath Recovery.*

To state a *Monell* claim against Southwest and Wellpath, the Petersens must have adequately pleaded facts of: (a) a Wellpath policy or custom, (b) by a Wellpath policymaker, (c) that implemented it with deliberate indifference, and (d) is the moving force behind Brian Petersen's constitutional violation.[4]

The Petersens say that "Brian was charged with a felony he did not commit, rightfully believed he would lose his chosen career path entirely, and displayed obvious signs of distress, anxiety, fear, depression, ... suicide, and other mental anguish which the [d]efendants were aware."

They insist that Wellpath:

a.　did not make an effort to "perform proper medical healthcare examinations;"

b.　did not "make proper intervention;"

c.　did not "coordinate care with healthcare professionals;"

d.　did not "properly interpret patient information;"

e.　did not "make critical decisions about needed actions ... of direct and supervis[ed] care delivered by healthcare personnel;"

f.　failed to properly train Johnson or "staff with necessary mental

---

[4] *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

health care professionals;"

g.    "ignored obvious signs" that Brian Petersen could be suicidal; and

h.    treated Brian Petersen with "deliberate indifference, recklessness, negligence, and gross negligence to his serious medical needs."

The Petersens argue that because Brian Petersen was not properly treated and denied medical care, he "foreseeably committed suicide, and would not have done so but for [the] ... lack of treatment."

A list of legal conclusions, unsupportable assertions, and bald allegations are wholly inadequate to plead a section 1983 claim. The Petersens have not given a single fact of a policy, custom, policymaker, or that Wellpath was aware of Brian Petersen's embarrassing arrest.

The Petersens do not offer a shred of legal support that Wellpath had a duty to prevent Brian Petersen's suicide two days after he was released – violating his rights under the 4th, 5th, and 14th Amendments. Wellpath's responsibilities ended once Brian Petersen left the jail. His actions in the two days after his release are outside of its control. He had the opportunity to seek his own mental health care, and he sadly chose otherwise. The court again finds the same issues with causation as before.

The Petersens' section 1983 claim against Southwest and Wellpath will be dismissed.

5.    *Conclusion.*

Because they have failed to state a claim, Douglas and Pamela Petersens' claims against Bridgitt Johnson, Southwest Correctional Medical Group, Inc., and Wellpath Recovery Solutions, LLC, will be dismissed.

Signed on May 24, 2021, at Houston, Texas.

Lynn N. Hughes
United States District Judge