*Legal Department*

# CITY OF CONROE

Est. 1904

June 8, 2021

Randall L. Kallinen
Attorney at Law
511 Broadway Street
Houston, Texas 77012

Re:    Request for Information

Dear Mr. Kallinen,

Please be advised, records responsive to the subpoena for records you served on the City of Conroe have been compiled are available for you to pick-up at the City of Conroe Police Department, located at 2300 Plantation Drive, Conroe, Texas 77303.  You should contact Conroe Police Department Records with respect to any costs that may be associated to and allowed under the Federal rules for non-party discovery.

Also, attached hereto are the City of Conroe's answers and proposed objections to the interrogatories you served on the City.  The Court's May 3, 2021 discovery order clearly limited interrogatories to the audio recording during the investigation.  Most of the interrogatories exceed this clearly defined limitation.  Please advise whether you will accept these objections and withdraw the interrogatories or if the City of Conroe will need to file a motion to seek a protective order from the Court.

Sincerely,

Michael T. Garner
Assistant City Attorney
(936) 522-3371

cc:    Daniel Plake

Case No. 4:20-cv-04243

|  |  |  |
|---|---|---|
| | § | |
| DOUGLAS PETERSEN, *ET. AL.*, | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | IN THE UNITED STATES DISTRICT COURT |
| VS. | § | |
| | § | SOUTHERN DISTRICT OF TEXAS |
| MONTGOMERY COUNTY, TEXAS, *ET. AL.* | § | |
| | § | |
| DEFENDANTS. | § | |
| | § | |

THE CITY OF CONROE'S AND THE CONROE POLICE DEPARTMENT'S
RESPONSE TO PLAINTIFF'S INTERROGATORIES

TO:   PLAINTIFFS, by and through Plaintiff's attorney, Randall L. Kallinen:

Attached hereto are the City of Conroe's objections and answers to Plaintiff's Interrogatories to Conroe Police Department.

Respectfully submitted:

Michael T. Garner:   SB29076135
                     Federal ID: 1232783
Assistant City Attorney
City of Conroe
300 West Davis Street
Conroe, Texas 77301
Telephone:     (936) 522-3371
Facsimile:     (936) 522-3009
E-mail:        mgarner@cityofconroe.org

I certify that on June 8, 2021, a true and correct copy of the foregoing was served upon the attorney for the Plaintiffs and the attorney for Defendant, Montgomery County, Texas.

Michael T. Garner
Assistant City Attorney
City of Conroe

THE CITY OF CONROE'S AND THE CONROE POLICE DEPARTMENT'S
RESPONSE TO PLAINTIFF'S INTERROGATORIES

| | |
|---|---|
| 1. | Please state the full name, address, job title and employer of each person answering and assisting in answering these Interrogatories.<br><br>ANSWER: |

In response to Interrogatory No. 1, Detective D. Dunn, City of Conroe Police Department, provided answers to these interrogatories to Michael T. Garner, Assistant City Attorney, who compiled the answers and necessary objections thereto.

| | |
|---|---|
| 2. | Identify each person present when Conroe Police Officer Sutton left a voice message for Brian Petersen.<br><br>ANSWER: |

In response to Interrogatory No. 2, Conroe Police Officer Sutton was not involved in the investigation related to Deputy Report for Incident 19080031. Detective D. Dunn of the Conroe Police Department was the investigator with respect to Deputy Report for Incident 19080031. In further response to Interrogatory No. 2, no one else was present at the time.

| | |
|---|---|
| 3. | Identify every recording of Officer Sutton in the last ten years by date and arrestee (if an arrest was made) during any police operation or sting or practice whereby Sutton claims or asserts he sounds like a minor or tried to sound like a minor.<br><br>ANSWER: |

In response to Interrogatory No. 3, Conroe Police Officer Sutton was not involved in the investigation related to Deputy Report for Incident 19080031. Detective D. Dunn of the Conroe Police Department was the investigator with respect to Deputy Report for Incident 19080031. In further response to Interrogatory No. 3, the City of Conroe objects to Interrogatory No. 3 as overbroad and outside of the scope of the Court's May 3, 2021 discovery order, to-wit:

4. "By May 14, 2021, the parties may send interrogatories to the Conroe Police Department about *THE* audio recordings during *THE* investigation." [*EMPHASIS ADDED*]

> 4.  Identify every Conroe police and task force operation regarding solicitation of a minor where an officer left a voice message for a suspect or target or called them pretending to be a minor in the last ten years.
>
> **ANSWER:**

In response to Interrogatory No. 4, the City of Conroe objects to Interrogatory No. 4 as overbroad and outside of the scope of the Court's May 3, 2021 discovery order, to-wit:

4.  "By May 14, 2021, the parties may send interrogatories to the Conroe Police Department about *THE* audio recordings during *THE* investigation." [*EMPHASIS ADDED*]

> 5:  Identify every Conroe police and task force police operations manual or other writing which references leaving voice messages or calling suspects in solicitation of a minor sting operations or not to call or leave voice messages.
>
> **ANSWER:**

In response to Interrogatory No. 5, the City of Conroe objects to Interrogatory No. 5 as overbroad and outside of the scope of the Court's May 3, 2021 discovery order, to-wit:

4.  "By May 14, 2021, the parties may send interrogatories to the Conroe Police Department about *THE* audio recordings during *THE* investigation." [*EMPHASIS ADDED*]

In further response to Interrogatory No. 5, the Conroe Police Department does not possess information responsive to Interrogatory No. 5.  Based on information and belief, information responsive to Interrogatory No. 5 may be maintained by the Montgomery County District Attorney's Office.

> 6:  Identify every criminal case by defendant, case number, and court where a Conroe police officer or task force member pretending to be a minor left a voice message or spoke with a target or suspect in solicitation of a minor sting operations in the last ten years.
>
> **ANSWER:**

In response to Interrogatory No. 6, the City of Conroe objects to Interrogatory No. 6 as overbroad and outside of the scope of the Court's May 3, 2021 discovery order, to-wit:

4.  "By May 14, 2021, the parties may send interrogatories to the Conroe Police Department about *THE* audio recordings during *THE* investigation." [*EMPHASIS ADDED*]

7.   Identify all proof that the Conroe Police Department had at the time of Brian's death that any minor was on Grinder.

ANSWER:

In response to Interrogatory No. 7, the City of Conroe objects to Interrogatory No. 6 as overbroad and outside of the scope of the Court's May 3, 2021 discovery order, to-wit:

4.   "By May 14, 2021, the parties may send interrogatories to the Conroe Police Department about *THE* audio recordings during *THE* investigation." [*EMPHASIS ADDED*]

8.   What evidence does Conroe PD or the task force possess that tends to show that Officer Sutton did or did not sound like a minor when he left the voice message for Brian.

ANSWER:

In response to Interrogatory No. 8, Conroe Police Officer Sutton was not involved in the investigation related to Deputy Report for Incident 19080031.  Detective D. Dunn of the Conroe Police Department was the investigator with respect to Deputy Report for Incident 19080031.  In further response to Interrogatory No. 8, the City of Conroe objects to Interrogatory No. 8 as overbroad and outside of the scope of the Court's May 3, 2021 discovery order, to-wit:

4.   "By May 14, 2021, the parties may send interrogatories to the Conroe Police Department about *THE* audio recordings during *THE* investigation." [*EMPHASIS ADDED*]

9.   Has Officer Sutton received any retraining to not leave unrecorded voice messages or phone calls to targets or suspects in solicitation of a minor sting operations?

ANSWER:

In response to Interrogatory No. 9, Conroe Police Officer Sutton was not involved in the investigation related to Deputy Report for Incident 19080031. Detective D. Dunn of the Conroe Police Department was the investigator with respect to Deputy Report for Incident 19080031. In response to Interrogatory No. 9, The City of Conroe objects to Interrogatory No. 9 as overbroad and outside of the scope of the Court's May 3, 2021 discovery order, to-wit:

4.   "By May 14, 2021, the parties may send interrogatories to the Conroe Police Department about *THE* audio recordings during *THE* investigation." [*EMPHASIS ADDED*]

> 10.   Describe all training that Officer Sutton has regarding leaving voice messages for or calling suspects in solicitation of a minor sting operations.
>
> **ANSWER:**

In response to Interrogatory No. 10, Conroe Police Officer Sutton was not involved in the investigation related to Deputy Report for Incident 19080031. Detective D. Dunn of the Conroe Police Department was the investigator with respect to Deputy Report for Incident 19080031. In further response to Interrogatory No. 10, The City of Conroe objects to Interrogatory No. 10 as overbroad and outside of the scope of the Court's May 3, 2021 discovery order, to-wit:

4. "By May 14, 2021, the parties may send interrogatories to the Conroe Police Department about *THE* audio recordings during *THE* investigation." [*EMPHASIS ADDED*]

> 11.   Describe all training that Officer Sutton has regarding solicitation of a minor sting operations.
>
> **ANSWER:**

In response to Interrogatory No. 11, Conroe Police Officer Sutton was not involved in the investigation related to Deputy Report for Incident 19080031. Detective D. Dunn of the Conroe Police Department was the investigator with respect to Deputy Report for Incident 19080031. In further response to Interrogatory No. 11, the City of Conroe objects to Interrogatory No. 11 as overbroad and outside of the scope of Court's May 3, 2021 discovery order, to-wit:

4. "By May 14, 2021, the parties may send interrogatories to the Conroe Police Department about *THE* audio recordings during *THE* investigation." [*EMPHASIS ADDED*]

> 12.   Describe every detail you can about how and what voice message was left for Brian. Include a transcript of or the words of the voice message left for     Brian. If the message canno be transcribed then provide the message left from memory.
>
> **ANSWER:**

In response to Interrogatory No. 12, in addition to the documents and records provided to Plaintiff pursuant to Plaintiff's Subpoena to Produce Documents, Information, or Objects, specifically: the voice message was sent by Detective D. Dunn to Brian through the Grindr app. The message, based on Detective D. Dunn's memory, was to the effect of: "*Hey, it's Jason, what's up?  Just leaving a message so you can hear my voice.*" There is not a recording or transcript of the voice message.

| 13.   Describe all the training and practice Officer Sutton has concerning trying to sound like a minor. |
| --- |
| **ANSWER:** |

In response to Interrogatory No. 13, Conroe Police Officer Sutton was not involved in the investigation related to Deputy Report for Incident 19080031. Detective D. Dunn of the Conroe Police Department was the investigator with respect to Deputy Report for Incident 19080031. In further response to Interrogatory No. 13, The City of Conroe objects to Interrogatory No. 13 as overbroad and outside of the scope of the Court's May 3, 2021 discovery order, to-wit:

4. "By May 14, 2021, the parties may send interrogatories to the Conroe Police Department about _THE_ audio recordings during _THE_ investigation." [_EMPHASIS ADDED_]

---

Undersigned attorney for the City of Conroe verifies answers to the foregoing interrogatories are true and correct the best of undersigned's knowledge, information, and belief. Undersign, on behalf of the City of Conroe, also makes the objections noted above to individual interrogatories.

Michael T. Garner
Assistant City Attorney
City of Conroe



# Conroe Police Department
## Deputy Report for Incident 19080031

19080223

| | | |
|---|---|---|
| **Nature:** Sex Offense | **Address:** 1520 LAKE FRONT CIR | |
| **Location:** | The Woodlands TX 77380 | |

| | | |
|---|---|---|
| **Offense Codes:** OSMS | | |
| **Received By:** Cosme, S | **How Received:** O | **Agency:** CPD |
| **Responding Officers:** Dunn, D | | |
| **Responsible Officer:** Dunn, D | **Disposition:** CAA 08/01/19 | |
| **When Reported:** 16:47:08 08/01/19 | **Occurred Between:** 16:30:00 08/01/19 and 16:46:47 08/01/19 | |

| | | |
|---|---|---|
| **Assigned To:** | **Detail:** | **Date Assigned:** **/**/** |
| **Status:** CLO | **Status Date:** 08/07/19 | **Due Date:** 08/07/19 |

**Complainant:**

| | | |
|---|---|---|
| **Last:** | **First:** | **Mid:** |
| **DOB:** **/**/** | **Dr Lic:** | **Address:** |
| **Race:** | **Sex:** | **Phone:** | **City:** , |

## Offense Codes

| | |
|---|---|
| **Reported:** | **Observed:** |

**Additional Offense:** OSMS Online Solic Minor W/Int Sex

## Circumstances

| | |
|---|---|
| **Responding Officers:** | **Unit :** |
| Dunn, D | 2163 |

| | | |
|---|---|---|
| **Responsible Officer:** Dunn, D | **Agency:** CPD |
| **Received By:** Cosme, S | **Last Radio Log:** 18:03:41 08/01/19 CMPLT |
| **How Received:** O Officer Report | **Clearance:** CA Cleared - Arrest |
| **When Reported:** 16:47:08 08/01/19 | **Disposition:** CAA **Date:** 08/01/19 |
| **Judicial Status:** | **Occurred between:** 16:30:00 08/01/19 |
| **Misc Entry:** | **and:** 16:46:47 08/01/19 |

| | | |
|---|---|---|
| **Modus Operandi:** | **Description :** | **Method :** |

## Involvements

05/25/21

| Date | Type | Description | Relationship |
|------|------|-------------|--------------|
| 08/07/19 | Name | PETERSEN, BRIAN SCOTT | Suspect |
| 08/01/19 | Offense | Offense#: 139853 - F2 - 1 count | Charged With |
| 08/01/19 | Cad Call | 16:47:08 08/01/19 Sex Offense | Initiating Call |

## Narrative

On 07/31/2019, I, Detective D. Dunn, with Conroe Police Department, while assigned to the internet Crimes against Children (ICAC) Taskforce was conducting an investigation on the social media app "Grindr." While on "Grindr" I was portraying a fourteen year old boy using the profile name, "Fresh Meat." Grindr is a social media app for males who are interested in dating, hooking up, and befriending the same sex. I received a message at 6:48pm saying "How was your weekend, are you looking for something tonight, and yes I can host." I asked the male, who would later be identified as Brian Petersen if he was into younger boys. Petersen then asked my age. I advised Petersen that I was under eighteen. I then asked Petersen again if he was into younger boys. Petersen said, "I'm into guys who are interesting and I'm not particularly into younger guys, but I don't write them off either."

I then sent Petersen a photo of my male decoy whom he thought was under eighteen. Petersen then asked how old was I and then said that I look "fun and cool." Petersen then said that he could host. I asked Petersen if he was free tomorrow and he said maybe. I then told Petersen that I was fourteen. Petersen then asked what school did I attend and I told him Conroe High. Petersen then said he knew a lot of people from there and have nephews my age that are involved in a lot.

On 08/01/2019, I sent Petersen a message saying I was sorry for falling asleep. Petersen then asked what kind of experience I had. I asked Petersen what he meant. Petersen said, "What sexual experience do you have?" I advised Petersen that I had been with two guys in the past. Petersen replied, "Yeah, so you know how to take it?" Petersen then said, "When are you available and for how long?" I advised Petersen that I would be free after 1pm today. Petersen then asked where he could pick me up and I advised Petersen he could come to my apartments. Petersen then asked what would be the best time and asked for the address. I gave Petersen the address to the target location. I asked Petersen to send me a picture of himself. Petersen responded, "I can't, the age difference makes sending pictures very risky." Petersen then said he could be at my location in less than 30 minutes at approximately 2:30pm. Petersen then stated that he was nervous and he generally meets guys over the age of twenty five.

Petersen asked for the name of my apartments and I gave him the name and address. Petersen then said he goggled the address and he said he was familiar with the location. Petersen then requested I send him a voice message to help calm his nerves. I sent Petersen a voice message using my voice and pretending to sound like a younger teen. Petersen then asked me to send him a shirtless picture so he could know I was real. I advised Petersen that I would send him a shirtless picture later. Petersen advised me that he was riding around the area of Research Forest and he wanted me to meet him at the Sonic Restaurant nearby. I stalled for maybe an hour until the other ICAC detectives arrived at the staging location. I asked Petersen what all was he wanting to do? Petersen said we could decide that after we meet. Petersen then advised me that he was at Sonic and wanted me to walk there. I continued to stall and I told Petersen I was nervous because he was being secretive and not sending me any pictures. Petersen responded, "I understand if you do not want to meet, but the circumstances require me to be less forthcoming."

Petersen then said he was tired of driving in circles and he asked again if I wanted to meet up. Petersen then said, "I assume it's called off." When the other Detectives arrived at the staging location I advised them that Petersen was possibly driving in the area. Petersen advised me that he had left the

location and went to a nearby store. I advised Petersen to go back to the Sonic and I would meet him there.  Petersen would not give me a vehicle description or send me a photo of himself. I asked Petersen where will he be and he said the side entrance near the apartments across from Sonic. Detectives observed a male sitting alone in a silver passenger car across from the Sonic. The driver drove to the Sonic parking lot and back across to his original sitting area several times. This behavior was very suspicious and led us to believe the driver was possibly Petersen.

I advised Petersen that I was at the Sonic but did not see him. Petersen advised me to go where the cars enter and exit Sonic.  I then observed the driver of the silver passenger car drive slowly through the Sonic parking lot. The driver was looking around as if he was looking for someone. The driver then proceed back across the street driving through the parking lot slowing and looking around. The driver then proceeded to leave the location. Marked patrol units were called to stop and detain the driver at the traffic light. I got the driver's cellphone and located the "Grindr" app displayed. The conversation between Petersen and I was also displayed on the app, which helped us positively identify Petersen as my suspect.

Petersen was transported back to the staging area to be interviewed. I read Petersen his Miranda rights and he refused to talk without a lawyer. Petersen refused to take a polygraph and did not want to give consent to search his phone. Petersen was advised he was being arrested for online solicitation of a minor. Petersen's phone was later taken to the Montgomery County District Attorney's ICAC office and placed in evidence. Petersen's vehicle was later towed from the staging area.

On 08/05/2019, I received a message from Conroe Police Officer J. Melchor. According to Officer Melchor, the family of Petersen were concerned because they had not heard from him for a few days. I advised Officer Melchor that I had arrested Petersen on 08/01/2019 and I possession of his phone. Officer Melchor also advised me that the family were concerned that Petersen was possibly suicidal. Officer Melchor also advised me that Petersen was a high school Teacher.

On 08/06/2019, I went to Grand Oaks High School and spoke with Asst. Principal Sarah Dorey regarding Petersen's arrest. Ms. Dorsey advised me that Petersen was a new Teacher coming from Oak Ridge High School and he was scheduled to start working on 08/07/2019. Ms. Dorsey gave me the contact information for Sgt. M. Mann with the Conroe ISD Police Department. I made contact with Sgt. Mann and advised him that I had recently arrested Petersen for online solicitation of a minor. Sgt. Mann said he would pass that information down to his administration and they would also notify the superintendent.

Officer Melchor later advised me that she contacted the tow yard to see if Petersen had picked up his car and he had not. Later that night Officer Melchor advised me that forced entry was made at Petersen's residence and he was found deceased (suicide). See case #19080223.

On 08/07/2019, I made contact with Sgt. Mann and advised of that Petersen was found deceased. Sgt. Mann advised me that he would notify the administration. I later notified CPS since Petersen was in a position working directly with kids.

The CPS report ID number is 72563153 and the Intake agent is Sandra ID#5444

Online Solicitation of a minor/sexual intent F2

This case will be closed.

_____
Responsible LEO:


_____
Approved by:


_____
Date

## Supplement

```
CAD Call info/comments
==============================
```

ARREST # 1908010      PETERSEN,BRIAN SCOTT W/M 112979    SOLICITATION OF MINOR

## Supplement

Can you add the interview with Brian Petersen to the case file. The interview
was recorded on Aug 1st at approximately 16:30 hours or so, thanks

*Deputy Report for Incident 19080031*                                           *Page 8 of 11*

## Supplement

```
OSMS Dismissed on 8/8/19... defendant is deceased
```

## Supplement

I need the case file burned to (2) disk please for the DA's office

## Sentryx Booking Information:

**Sentryx Booking Number:**  1908010                            **Name Number:**  283086

**Name:**  PETERSEN, BRIAN SCOTT                **Address:**  305 OXFORD DR
**Phone:**  (818)519-0441                                                    Conroe, TX 77301
**DOB:**  11/29/79                                                 **Dr Lic:**  33585586
**Assigned Bed:**  "                               **Current Location:**  "
**Booking Date:**  08/01/19

### Sentryx Arrest # 86289

**Time/Date:**  16:51:30 08/01/19      **Agency:**  CPD
**Age at Arrest:**  39                          **Location:**  1520 Lake Front Cir      **Officer:**      Dunn, D
**Arrest Type:**  VIEW                          **Area:**  M                            **Reference:**     19080031
**Disposition:**

### Sentryx Offense # 139853

**Statute:**  PC 33.021(c)                                          **NCIC:**
**Offense:**  OSMS Online Solic Minor W/Int Sex      **Crime Class:**  F2
**Offense Reference:**                          **Offense Type:**  S                          **Offense Area:**  M
**Related Incident:**  19080031                              **Law Jurisdiction:**  PC
**Entry Code:**  CRIM                                **Offense Location:**
**Court Code:**  DIS                                **Offense Time/Date:**  16:51:30 08/01/19
**Offense Disposition:**                                **Disposition Date:**  **/**/**

## Name Involvements:

**Suspect :**  283086

|  |  |  |  |
|---|---|---|---|
| **Last:** PETERSEN | **First:** BRIAN | **Mid:** SCOTT |
| **DOB:** 11/29/79 | **Dr Lic:** 33585586 | **Address:** 305 OXFORD DR |
| **Race:** W | **Sex:** M | **Phone:** (818)519-0441 | **City:** Conroe, TX 77301 |

05/25/21

## AFFIDAVIT

## FOR BUSINESS RECORDS

"Before me, the undersigned authority, personally appeared
Rosa Hernandez_____, who being by me duly sworn, deposed as follows:

"My name is _Rosa Hernandez_____, I am of sound mind, capable of making this
affidavit, and personally acquainted with the facts herein stated:

"I am the custodian of the records for _Conroe Police Dept._ ("Business
Entity"). Attached hereto are _12_ pages of records and or/media disc ("records") from the
Business Entity. These records are kept by me in the regular course of business of the Business
Entity, for an employee or representative of the Business Entity, with knowledge of the act,
event, condition, opinion, or diagnosis, recorded to make the record or to transmit information
thereof to be included in such record; and the record was made at or near the time or
reasonably soon thereafter. The records attached hereto are the original or exact duplicates of
the original."

AFFIANT

SWORN TO AND SUBSCRIBED before me on the _8th_ day of ___April___, 202_1_.

Margaret Dalgleish

NOTARY PUBLIC, STATE OF TEXAS



MARGARET DALGLEISH
My Notary ID # 131979964
Expires April 17, 2023

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Texas

| | | |
|---|---|---|
| Douglas Petersen, et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  4:20-CV-04243 |
| Montgomery County, Texas, et al. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:         Conroe Police Department, 2300 Plantation Drive, Conroe, Texas 77303

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Any and all criminal records relating to Brian Petersen (DOB: 11/29/1979). Please see attached Order to Disclose and Report signed by Judge Hughes.

| Place: Montgomery County Attorney's Office<br>501 N. Thompson, Suite 300<br>Conroe, Texas 77301 | Date and Time:<br><br>04/22/2021 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      04/07/2018

                      *CLERK OF COURT*

                                                                OR

_____                    _____
*Signature of Clerk or Deputy Clerk*                                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*      Montgomery County, Texas _____, who issues or requests this subpoena, are:

Daniel Plake, Assistant County Attorney, 501 N. Thompson, Suite 300, Conroe, Texas 77301

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or

  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT        SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
**ENTERED**
March 31, 2021
Nathan Ochsner, Clerk

| | | |
|---|---|---|
| Douglas Petersen, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| versus | § | Civil Action H-20-4243 |
| | § | |
| Montgomery County, Texas, et al., | § | |
| | § | |
| Defendants. | § | |

## Order to Disclose and Report

1.  By April 23, 2021, Douglas Petersen must list, for the last 20 years, all doctors that Brian Petersen had seen with the name and location of the doctor, the date of the visit, and the reason for the visit.

2.  By April 23, 2021, the Wellpath defendants must give Bridgett Johnson's credentials and list all of her medical experiences.

3.  By April 23, 2021, Montgomery County must give the Conroe police department and district attorney's records of Brian Petersen's criminal investigation – and may subpoena the records if necessary.

4.  By April 30, 2021, the parties must jointly report the status of the case and the next steps to advance the litigation.

Signed on March 30, 2021, at Houston, Texas.

Lynn N. Hughes
United States District Judge

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 4:20-CV-04243

### PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* Jasper Brooks Investigator

on *(date)* 04/07/2021.

☒ I served the subpoena by delivering a copy to the named person as follows: Gracie Perez

on *(date)* 04/07/2021 ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ 0 .

My fees are $ 0 for travel and $ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: 04/07/2021

Server's signature

Jasper Brooks Investigator
*Printed name and title*

501 N. Thompson Conroe TX 77301
*Server's address*

Additional information regarding attempted service, etc.:

If this report is sent to you by facsimile and you are unable to read any of the
pages, please call
( ) - Ext.

*1408 -0031
Dum*

# TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES

# NOTIFICATION TO LAW ENFORCEMENT AGENCY OF ABUSE/NEGLECT REPORT

SECTION 261.105 (T.F.C.) Requires that Children's Protective Services notify the appropriate law enforcement agency of all reports of abuse/neglect received by the Department other than reports received from such agencies. This letter confirms that CPS has notified you of the report of child abuse/neglect specified below.

**TO:** Conroe Pd (e-Mail Only) +cac

**DATE:** 8/7/2019

**FROM:** Huntsville

**PHONE:** (936) 291-0772 Ext.

## CONFIDENTIAL

| | |
|---|---|
| **CASE NAME:** Petersen,Brian S | **DATE OF REPORT:** 8/7/2019 |
| **CASE NUMBER:** 47867377 | **TIME OF REPORT:** 01:16 PM |
| **HOUSEHOLD ADDRESS** | **INVOLVING ALLEGATION TYPES** |
| | Sexual Abuse |
| CONROE, TX | |

**ACTION TAKEN BY CPS:**

**ACTION REQUESTED:** Please notify CPS staff at the above listed CPS office of all actions planned or taken in this case so that we can coordinate our respective investigations and services. If you determine that this case should be reported to another law enforcement agency, please forward this notification to the appropriate agency.

SECTION 261.201 (T.F.C.) The name of the complainant (i.e. reporter or informant) is confidential. Consequently, identifying information about the complainant is not included in this report. If this information is needed to conduct the criminal investigation, the assigned Child Protective Services worker or supervisor may orally share information about the complainant's identity with the assigned investigating officer.

Case Name: Petersen,Brian S
Case #: 47867377

## INTAKE REPORT
## CHILD PROTECTIVE SERVICES

### SUMMARY

Intake #: 72563153
Primary Allegation: Sexual Abuse

Date Reported: 8/7/2019
Time Reported: 01:16 PM

Worker Safety Issues: N
Sensitive Issues: N

L/E Notification Date: 8/7/2019
L/E Jurisdiction: Conroe Pd (e-Mail Only)
+cac

Suspected
Manufacturing
of Methamphetamines: N
Special Handling:

Priority Determination: 2

Determination Factors: Behavioral indicators of sx molestation
Professional reporter

Reason for Closure:
Worker Taking Intake: Reyes,Sandra
EL PASO
( ) -
Ext

---

## PRINCIPAL INFORMATION

|  |  | Oldest Victim | Alleged Victim |
|---|---|---|---|

Approx: N
Age:
DOB:
Sex: Unknown
In-Law: N

SSN:
DOD:
Reason:

Language: English
Ethnicity:
Marital: Child,not applicable

Addresses:

Residence

CONROE, TX
MONTGOMERY

Attn:
Notes:

Phones:

Aliases:

Notes:

| Brian Scott Petersen |  | School Personnel | Alleged Perpetrator |
|---|---|---|---|

Approx: N
Age: 39
DOB: 11/29/1979
Sex: Male
In-Law: N

SSN:
DOD: 8/6/2019
Reason:

Language: English
Ethnicity: White (non-Hispanic)
Marital: Unknown

Addresses:

Residence 305 OXFORD DR

Attn:
Notes:

CONROE, TX 77303-1814
MONTGOMERY

**Phones:**
Residence (818) 519-0441 Ext.                    Notes:

**Aliases:**

**Notes:**

## COLLATERAL INFORMATION

| Douglas Petersen | Other | No Role |
|---|---|---|

| Approx: N | Age:<br>DOB:<br>Sex: Male<br>In-Law: N | SSN:<br>DOD:<br>Reason: | Language: English<br>Ethnicity: White (non-Hispanic)<br>Marital: Married |
|---|---|---|---|

**Addresses:**
Residence                                  Attn:
                                           Notes:
        , CA
        OUT OF STATE

**Phones:**
Residence-cell. (559) 688-1021 Ext.              Notes:

**Aliases:**

**Notes:**

## ALLEGATION DETAIL

| Victim | Allegation(s) | Alleged Perpetrator(s) |
|---|---|---|
| Unknown 1 | Sexual Abuse | Petersen, Brian S |

## CALL NARRATIVE

*Document worker safety issues, special or sensitive case handling information on the Special Handling Window*

**GENERAL INFORMATION/DESCRIPTION:**

Conroe PD Case #19080031

47640320            CPS   OPN   Adams,Andrew   MONTGOMERY   Austin,Lawonta D   Foster/Adoptive
Home   PRN

**Persons Involved:** OVs represents an unknown/unidentified teenagers. SC was a teacher at Oak Ridge High School   XX is father to SC

**Primary Concerns:** Today is 08/07/2019.

On Thursday (08/01/19), SC was arrested for solicitation of a minor. Law enforcement was undercover pretending to pass as children through the internet and SC thought he was talking to a 14 year old child.

As of right now no victims from the school have been identified, however there is a concern as SC had access to many teenagers at school around the same age of his solicitation

SC was arrested on Thursday and got out of jail   The last known conversation with SC was reported on Sunday (08/04/19)   SC committed suicide by shooting himself and with carbon monoxide   SC was found yesterday (08/06/19) in a room in his house

XX flew from California yesterday (08/06/19)

**Signature Block:** Sandra Reyes PSIS IV

**Companion Reports Generated (if applicable):** N/A

**Assessment / History:**
CPS SXAB P2

**CONCLUSIONS:**
**Locating Information:**
SC was a teacher at,
Oak Ridge High school
27330 Oak Ridge School Rd.
Conroe, TX. 77385

**LOCATING INFORMATION:**Directions   When the family is home   Where the victim can be seen.

**WORKER SAFETY ISSUES:**

**SUSPECTED MANUFACTURING OF METHAMPHETAMINES:**

<center>

&lt;COVER&gt;
&lt; FCSFILE:CAPSFCS.PCL&gt;
&lt; NOTE: 47867377&gt;
&lt; NOTE: Petersen,Brian S&gt;
&lt; TO_NAME: 72563153 Conroe Pd (e-Mail Only) +cac&gt;
&lt; TO_FAXNUM: (936) 788-2474&gt;

</center>

## Statewide Intake Narrative Abbreviations

This chart defines abbreviations you may see in reports from Statewide Intake.

| Abbreviation | Meaning | | Abbreviation | Meaning |
|---|---|---|---|---|
| AA | Case Reading | | IC | Institution Contracted |
| AB | Absent Parent | | IL | In-Law Option |
| | | | | |

| | |
|---|---|
| AD | Precon. Adop. Parent (CPS) |
| AG | Community Agency |
| AN | Anonymous |
| AT | Attorney |
| AU | Aunt/Uncle |
| AV | Attorney Ad Litem |
| BA | Babysitter |
| BC | Board & Care (APS) |
| BY | Passer-by |
| CA | Case Manager |
| CL | Client |
| CM | Community Cntr. Staff (APS) |
| CO | Cousin |
| CR | Clergy |
| CS | CASA |
| CT | Court |
| DA | Daughter |
| DC | Day Care Facility/Provider |
| DR | Doctor |
| EC | Emergency Contact |
| EM | EMS/EMT |
| ES | Ex-Spouse |
| FA | Father |
| FI | Financial Institution |
| FK | Fictive Kin |
| FM | Other Family Member |
| FO | Foster Child |
| FP | Foster Parent |
| FQ | Foster Sibling |
| FR | Friend |
| FV | Family Violence Shelter |
| GC | Grandchild |
| GD | Grandparent Maternal |
| GE | Grandparent Paternal |
| GF | Grandparent Great |
| GFA | Grandfather |
| GMO | Grandmother |
| GG | Godparent |
| GU | Guardian |
| GW | Guardian Ad Litem |
| GX | Attorney/Guardian Ad Litem |
| HC | HCS Staff (APS only) |
| HS | HCSSA (APS only) |

| | |
|---|---|
| IN | Institution |
| IP | Institution Person./Volunteer |
| LA | Law Enforcement |
| MO | Mother |
| MF | Medical Facility Staff |
| MGFA | Maternal Grandfather |
| MGMO | Maternal Grandmother |
| MH | Mental Health Professional |
| NE | Neighbor |
| NN | Niece/Nephew |
| NR | Nurse |
| OS | Other Shelter |
| OV | Oldest Victim |
| PA | Parent |
| PB | Parent (Birth) |
| PC | Client's Paramour |
| PO | Probation/Parole Officer |
| PP | Parent's Paramour |
| PQ | Paid Caregiver (APS only) |
| PR | Service Provider |
| PY | Psychologist/Psychiatrist |
| PGFA | Paternal Grandfather |
| PGMO | Paternal Grandmother |
| RC | Reference Child |
| SA | Other State Agency |
| SB | Sibling |
| SC | School Personnel |
| SF | FPS Staff |
| SL | Self |
| SO | Son |
| SP | Spouse |
| SR | Step-Child |
| SS | Step-Sibling |
| ST | Step-Parent |
| STFA | Step-Father |
| STMO | Step-Mother |
| TP | Therapist |
| UF | Unreg. Family Hom(CPS) |
| UH | Unrelated Home Member |
| UK | Unknown |
| UP | Unpaid Caregiver (APS only) |
| XX | Other |



Montgomery County District Attorney's Office
DIGITAL FORENSICS SUBMISSION FORM



| Date of Request: 08/07/2019 | Requesting Agency: Conroe P.D. |
|---|---|
| Agency Case Number: 19-08-0031 | Montgomery County Cause Number: |
| Requestor's Name: D. Dunn | Contact Email Address: ddunn@cityofconroe.org |
| Contact Phone Number: 832-881-8953 | |

| Search Authority: | ☐ Search Warrant | ☒ Other: | Suspect Deceased. No warrant or consent needed |
|---|---|---|---|
| | ☐ Consent | | |

| Target Last Name: PETERSEN | Target First Name: BRIAN | Target DOB: 11/29/1979 |
|---|---|---|

Target DL/Social Security: TX: 33585586

Offense: Online Solicitation of a minor Under

Brief Synopsis of Case:  I was chatting with Petersen on Grindr. Petersen arrived at target location to engage in sexual activity with a minor. Petersen was arrested and refused to give consent to search his phone. Petersen later committed suicide.

Evidence Submitted (include make, model and serial): **1.)** Apple IPhone  6  , Serial #Unknown

Password or PIN Number (if applicable):  Phone password : Unknown

Keywords or other specific search terms (i.e., names, account numbers, email addresses, etc.) that would be helpful during analysis:

Has this device been viewed or examined by anyone prior to submission? ☐ Yes ☒ No.

If Yes, explain:.

Type of data you are requesting to recover.  Please be VERY specific (i.e., Word Documents, Graphic Files, Spreadsheets, Child Pornography, etc): Check phone for CP

**Evidence will NOT be accepted without a copy of the legal authority**

| | | |
|---|---|---|
| Person Submitting Evidence | Supervisor Approval | Person Receiving Evidence |



## EVIDENCE SUBMISSION
## DISTRICT ATTORNEY ICAC

| | |
|---|---|
| **Submitting Officer:** | D. Dunn |
| **Receiving Officer:** | M. Pena |
| **Date / Time:** | 08/07/2019 13:47 |
| **Case Number:** | 19-08-0031 |
| **Suspect Name:** | Petersen, Brian C. |
| **Suspect's DL or Social:** | KS TX: 33585586 |

| ITEM | DESCRIPTION | SERIAL NUMBER |
|:---:|:---:|:---:|
| 1 | Apple I PHONE 6 | UNKNOWN |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

_____D.DUNN_____
**SUBMITTING OFFICER**

_____
**RECEIVING OFFICER**

PAGE ___/___ OF ___/___



# Conroe Police Department
## Deputy Report for Incident 19080223

19080031

| | | |
|---|---|---|
| **Nature:** Welfare Check | | **Address:** 305 OXFORD DR |
| **Location:** 073 | | Conroe TX 77301 |

**Offense Codes:** DETH
**Received By:** Schubert, S     **How Received:** T     **Agency:** CPD
**Responding Officers:** Andrews, K, Frazier, M, Gallegos, G, McGrew, J, Melchor, J, Raglon, K, Cook, S
**Responsible Officer:** Cook, S     **Disposition:** CLO 10/02/19
**When Reported:** 21:03:39 08/06/19     **Occurred Between:** 21:03:20 08/06/19 and 21:03:20 08/06/19

| **Assigned To:** | **Detail:** | **Date Assigned:** **/**/** |
|---|---|---|
| **Status:** CLO | **Status Date:** 10/01 | **Due Date:** **/**/** |

**Complainant:**
| **Last:** | **First:** | **Mid:** |
|---|---|---|
| **DOB:** **/**/** | **Dr Lic:** | **Address:** |
| **Race:** | **Sex:** | **Phone:** | **City:** , |

## Offense Codes
**Reported:**     **Observed:**
**Additional Offense:** DETH Unattended Death

## Circumstances
LT20 Residence/Home

**Responding Officers:**     **Unit :**
Andrews, K     6179
Frazier, M     614
Gallegos, G     138
McGrew, J     210
Melchor, J     665
Raglon, K     6183
Cook, S     280

**Responsible Officer:** Cook, S     **Agency:** CPD
**Received By:** Schubert, S     **Last Radio Log:** 01:01:22 08/07/19 CMPLT
**How Received:** T Telephone     **Clearance:**
**When Reported:** 21:03:39 08/06/19     **Disposition:** CLO **Date:** 10/02/19

05/25/21

| | | |
|---|---|---|
| **Judicial Status:** | **Occurred between:** | 21:03:20 08/06/19 |
| **Misc Entry:** | **and:** | 21:03:20 08/06/19 |

| **Modus Operandi:** | **Description :** | **Method :** |
|---|---|---|
| Scene | Type Of Crime Scene | Single Family Home |

## Involvements

| Date | Type | Description | Relationship |
|---|---|---|---|
| 08/07/19 | Name | JONES, TRACY H | Witness |
| 08/06/19 | Name | PETERSEN, BRIAN SCOTT | Deceased |
| 08/06/19 | Name | ADAMS, ANDREW JOEL | Witness |
| 08/06/19 | Name | PETERSEN, DOUGLAS ARTHUR | Witness |
| 08/06/19 | Cad Call | 21:03:39 08/06/19 Welfare Check | Initiating Call |
| 08/21/19 | Evidence | dvd lowes surveillance | Evidence Incident |
| 08/07/19 | Evidence | Suicide Note (5 pages) | Evidence Incident |
| 08/07/19 | Evidence | 2.5" SATA 6Gb/s SSD SP550 | Evidence Incident |
| 08/07/19 | Evidence | Apple All-In-One Desktop | Evidence Incident |

## Narrative

On 08/05/19 at 2103 hours I, Officer J. Melchor, was dispatched to 305 Oxford Dr, regarding a welfare check.

The call was reported by Pamela Petersen for a welfare check on her son Brian Petersen. Call notes stated that her son was a teacher at Grand Oaks High School. She hasn't been able to get in contact with him in 4-5 days. She stated that he drove a silver colored Prius and parks it in the garage. She stated that Brian wasn't suicidal and that her and his father have been trying to get in contact with him.

Call notes stated that Brian had been arrested on 08/01/19 but has since been released. I confirmed with dispatch that he was released from jail and was originally booked in for Online Solicitation of a Minor by Conroe PD. I researched prior calls.

Cad 1672623 was a welfare check on 08/03/19. That was called in by Cory Arnold, an off duty officer with MCSO. (see call comments on that call). I called Cory he stated that they had plans to meet at Brian's on that date to hangout and Brian wasn't answering the door. Also stated Brian's vehicle was probably in the garage and he lived alone.  Cory stated that after he found out what Brian was arrested for, he no longer wanted the welfare check and cut ties with him.

Cad 1672637 was another welfare check on 08/03/19. That was called in by Tim Rust. Tim stated that he had been trying to get in contact with Brian and that he was a daily social media poster but couldn't get a hold of him. (see call notes on that call). I contacted Tim and he stated that he was friends with Brian and had not heard from him. He stated that he is usually on social media but hasn't been. Friends were supposed to go to Brian's for game night on Saturday but no contact was made with him. Tim said he heard he was arrested and was concerned about him. Tim said he didn't know of any medical problems but that "he was over weight like me". Tim stated that he thinks a guy named Andy had spoke to Brian via facebook messenger on Sunday 08/04/19 but couldn't confirm. I advised him to tell Andy to call Conroe PD to speak with me.

I went to the residence on the 5th and attempted contact at the front door but was unsuccessful. There was no vehicles in the driveway and the garage was shut so I couldn't see inside. Officer Markham and his PPO Raglon checked the back yard and door but it didn't appear any lights were on. Officer Markham stated that he observed a table and chairs and games set out. I tried Brian's cell phone but it went to voicemail. I got in contact with Detective Dunn who stated that Brian's phone was taken for evidence which would explain why it was going to voicemail. Detective Dunn also stated that Montgomery County Pct 3 assisted with the arrest and towed Brian's vehicle on the 1st when he was arrested. I attempted to find out who towed the vehicle to see if it had since been picked up but Montgomery County's system was down and unable to verify information for me. I called the school he worked for and spoke to the front desk. A female employee of the school said that some teachers came in on Monday the 5th but not all had to be there. She stated that Brian wasn't there but also didn't have to be unless he needed to prepare for class starting.

I called Brian's mother back and told her I was unsuccessful in making contact. I told Pamela and Doug (his father) what he had been arrested for. Pamela and Doug said they were worried and Pamela was crying. Doug stated that they talk to Brian daily and this wasn't normal for him not to speak to them. They said Brian had two roommates but one bought a house and the other she couldn't remember but that they moved out a few weeks ago. They weren't aware of any medical

conditions. They tried to message him on facebook but got no reply. Pamela
stated that her and Doug would be flying in from California where they reside.
They were concerned about Brian and wanted to go to his residence. They stated
that they would call Conroe PD when they got in town for a welfare check on
Brian.

Dispatch received a call for me from an Andrew (Andy), the person Tim was
speaking about. Andrew stated that he last spoke to Brian on Sunday morning
08/04/19. Brian drove a silver 2013-ish model Prius that he parks in the garage.
Andrew said that Brian told him that his phone wasn't working and all he has is
a computer but isn't supposed to be online. Brian told him, "Whether I win or
lose, my career is over." Andrew said that Brian has a maid that comes maybe
twice a month. Andrew said that money is tight after Brian's roommates moved out
a week or two ago so possibly no maid anymore. Andrew stated that Tim may have a
number to the maid though. Andrew thinks Brian takes medication for ADHD but
wasn't aware of anything else. Andrew said he drove by Brian's house that
evening (the 5th) and there doesn't appear to be a light on in his room. Brian
has black out curtains so if there was a light on, you might not be able to
tell. Brian has no animals. I asked about a key to the house or garage code but
Andrew said he would only give out a key and get it back or give out the garage
code and then change it. Andrew stated that Brian is usually on facebook and
that facebook no longer gave a time when he was last active. So Brian either had
not been active in awhile or ghosted himself so that you weren't able to see his
status. Andrew said Brian was usually up late playing video games but had not
been and it was possible he could've made himself invisible on the game.

I contacted Sergeant Gallegos and advised him of the situation and all details.
At this time it was decided that forced entry would not be made.
------------------------------------------------------------------------

TUESDAY 08/16/19
On this date I had dispatch contact MCSO to verify who towed Brian's vehicle. I
was advised it was towed by Keith's towing. I contacted Keith's towing and was
advised that the vehicle was still at their storage lot and had not been picked
up. I had dispatch confirm that Brian was out of jail and was advised that he
was released during the evening hours of 08/02/19. I contacted Andrew to see if
he had any further information since I knew that Pamela and Doug would be in
town tonight to request another welfare check. Andrew stated that he still had
not heard anything. He said that he had facebook messages that officers could
see if needed. He said that Brian had mentioned being on a site that was legal
for adults. On this site you talk to other adults and the adults act young and
you role play. Brian had told him that he didn't have an attorney yet and that
once evidence comes about he should be good. Andrew said that Brian sounded
confident he would beat his case but with the totality of everything he had
going on, he was concerned about Brian doing self harm. Andrew said Brian wasn't
in the best shape physically but lived close enough to the jail that when he
bonded out he could've walked home and may be there.

At around 2030 hours I, Officer J. Melchor, spoke with Doug and he stated that
they arrived in town at a local hotel. I advised them I would contact a
supervisor regarding another welfare check. I advised them to go to Brian's
residence and see if maybe he would answer the door for them if he were home.
Doug called back around 2100 hours and stated that him and Pamela went to the
residence and announced but were unsuccessful in making contact. I contacted
Sergeant Gallegos since he was familiar with the call the day before. I updated
him with any new information and it was decided that forced entry would be made
to check Brian's welfare.

Sergeant Gallegos, Officer Frazier, Officer Markham and his PPO Officer Raglon forced entry through the back door while I maintained coverage of the front. I was advised that officers located Brian inside the home and requested EMS to respond. EMS responded and gave a code 4 time of 2152 hours.

I entered the home through the back door. I observed gas cans near the front door on the inside of the home. The front door was dead bolted and locked. I was led upstairs by officer Frazier. I observed the deceased in his bedroom closet which is in the bedroom. The closet appeared to have a shear curtain or tarp hanging on the door. There was a generator and or leaf blower just outside the closet. It looked as if the blower was put through the shear curtain and into the closet where the deceased was. The deceased by lying down with his foot near the doorway. There was a few pages of green paper on a table in the bedroom. The green letter was written to friends and family. I didn't want to disturb any possible evidence so instead of picking up the papers to read all of the note, I just read the first page. It mentioned being gay and the grinder app. I exited the residence to speak with Pamela and Doug who were waiting outside.

A neighbor at 303 Oxford Dr, Tracy Jones, was outside and spoke with officers and wrote a statement. Her statement read: On 08/03/19, she was leaving with her daughter for a 1500 hours appointment. Around 1445 hours, they were getting in the truck when a group of people showed up to 305 Oxford. They asked if she knew the person that lived there or had seen him. She said she hadn't seen him in a few weeks. When her and her daughter returned around 1600 hours, there was another male standing in the front yard of Brian's residence. That male told them he was moving in in two months and was trying to get a hold of the owner. He told her that he hadn't been able to reach him and the calls were going straight to voicemail. She looked up CPD's non emergency number for the man and the man called. She said that man was told that there's nothing that could be done since it had only been 24 hours and so the male left. Around 1830 hours, Brian came out of his residence. Her daughter, Jessica Jones, spoke to Brian. Jessica told Brian that people had been at his house looking for him. Brian told her that he had been asleep and his phone was dead. Tracy's husband Clay Hightower and Jessica saw Brian get into a taxi cab minivan with a gas can. Brian returned about an hour later and had two gas cans and entered his house. Tracy didn't see Brian again.

There was a white envelope on the front door that said "Mr Petersen" on the front. Brian's mother opened it and it was front a bail bond's company for Brian to contact them. Also was a hand written note that said call me I can help signed Baker. Detective Cook said to record the findings using my body worn camera and release it to Brian's parents.

Medic 10, Corey Callihan, Mathhew Gronda, Caleb Trahan, and District 1 supervisor April Currie. Fire Engine 2 also responded. Detective Mcgrew and Cook were called out. Officer Vradenburg, crime scene alternate, also responded to assist Detective Cook. Detective Mcgrew advised dispatch to contact the JP and have him call him. Eickenhorst was contacted to have the body transported to the forensic center.

Brian's parents were on scene and notified.

DEAD BODY
WATCHGUARD, (Melchor, Frazier, Markham, Raglon, Sergeant Gallegos)

_____
Responsible LEO:


_____
Approved by:


_____
Date

## Supplement

```
CAD Call info/comments
=================================

21:58:00 08/06/2019 - Schubert, S
DOA
21:58:04 08/06/2019 - Schubert, S
ENGINE 2
22:41:41 08/06/2019 - Gallegos, G
MCHD unit 10
23:30:41 08/06/2019 - Alfaro, E
EICKENHORST ENRT 45 MIN - 1 HOUR ETA
```

## Supplement
DETECTIVE'S INVESTIGATION

On 08/06/19 I, Detective Joe McGrew, was called out at 2300 hours to investigate an apparent suicide at 305 Oxford Dr.  Upon arrival I met with Officer Melchor, who provided me with an outline of the events leading to the discovery of the deceased, Brian Petersen.  Petersen was arrested on 08/01/19 for Online Solicitation of a Minor after an ICAC sting.  He bonded out on 08/02/19, but did not retrieve his vehicle, which was towed following his arrest.  Several welfare checks were conducted at his residence at the behest of his parents and several friends.  Petersen's parents flew in from California, and personally requested another welfare check.  Forced entry was made on 08/06/19 and Petersen's body was discovered.  A time of death was provided by MCHD of 2152.  Responding officers spoke to the resident of 303 Oxford, Tracy Jones, who completed a voluntary statement.  She advised that she and her family had seen Petersen leave his home in a taxi at about 1800 hours on 08/04/19 carrying a gasoline can.  They observed him about an hour later return in a taxi with two gas cans.  This is presently the last known time that Petersen was seen alive.

I spoke to Petersen's parents, Douglas and Pamela Petersen.  They stated that they have regular contact with Brian and that it is unusual for them not to be able to get in touch with him.  He was always very responsive to their calls and texts.  The last text messages between them occurred on 08/01/19 (the date of his arrest).  They attempted to call and text him on 08/02/19, but were unsuccessful because Brian's phone had been confiscated during his arrest.  On the following Monday, 08/05/19, they began to call in welfare checks to the Conroe Police Department.  They flew in on 08/06/19 because no contact had been made with Brian.  They stated that his texts prior to losing contact with him were normal and he did not seem suicidal at the time, but they were worried that he became suicidal after they were informed about his arrest.  Douglas signed a Consent to Search form for the residence.

I observed the seen and saw that the residence was orderly and that there were many bookshelves holding table-top role playing games.  The deceased was in the closet of the upstairs southeast bedroom.  There was clear plastic sheeting covering the doorway, later found to be staples to the door frame and sealed with tape.  There was a gas-powered leaf blower inside the closet.  There was a gas-powered generator outside the closet, with a short length of rain pipe inserted from the exhaust pipe through the sheeting to the interior of the closet.  Brian was lying on his back with his head NNE and his feet SSW.  He was wearing a pair of boxer underwear and a pair of ear-muff hearing protectors.  His skin was discolored to pink.  I did not disturb the sheeting, but looked through a gap that had been made by responding officers.  After Crime Scene Investigator Cook processed the scene I observed while Eichenhorst personnel turned the body.  I did not observe any obvious wounds or injuries.  The body exhibited lividity and blanching that were consistent with the deceased dying in the position he was found in.

After initially observing the scene I contacted J.P. Mack and reported the situation as we knew it.  J.P. Mack stated that he was familiar with the Solicitation case, having been the one who reviewed the probable cause at Brian's initial hearing.  He ordered an autopsy and stated that he did not need to come to the scene.  Eichenhorst was contacted to transport the body.

A suicide note was displayed on a small desk at the foot of the bed in that bedroom.  It was hand-written on a green card-stock paper.  After CSI Cook

processed the scene I read the note.  The note stated that Brian was committing suicide because of the charges that had been pressed against him for Online Solicitation of a Minor.  The note stated that Brian was gay, but did not seem to have previously disclosed this to his family.  The note stated that he was not guilty, that he had known that he was going to meet an adult and not a child.  He listed several reasons that he believed supported this story.  He stated that even though he was innocent, he believed that his career as a teacher was destroyed simply by being charged with this crime.  He finished with personal messages for his family members.  CSI Cook collected the letter for evidence, along with a hard drive from a desktop computer and an all-in-one Apple computer.

Following the removal of the body the scene was released to Douglas Petersen. Petersen requested the suicide note.  I forwarded him photos of the note via email and advised him that we would release the note to him after it had been processed as evidence.

On 08/08/19 I attended the autopsy of Brian Petersen, conducted by Dr. Sarah Doyle of the Montgomery County Forensic Center.  I advised Dr. Doyle of the history leading to Petersen's death.  After the autopsy Dr. Doyle advised me that her determination is pending on lab results, but that her preliminary diagnosis is carbon monoxide poisoning.  She advised that she found "pill slurry" in his stomach contents, which could consist of the OTC sleep medications which were seen in Petersen's bedroom.

On the same date I removed the hard drive and the Apple all-in-one computer from evidence and transported it to Det. Dunn for submission to the ICAC computer forensics experts.

On 10/01/19 I received notification that the autopsy report for Brian Petersen was complete and had been added to this case file.  I reviewed the report and found that the Cause of Death was determined to be Carbon Monoxide Toxicity and that the Manner of Death was ruled as Suicide.

This case will be closed.

CASE STATUS: CLOSED
Detective Joe McGrew

## Supplement
CRIME SCENE SUPPLEMENT - SCENE

On 8-6-2019, at approximately 2230 hours, I, Investigator S. Cook was contacted by dispatch.  Dispatch advised that the on-call Crime Scene Investigator was requested at 305 Oxford Drive in reference to what appeared to be a suicide call.  Upon arrival, I met with Officer J. Melchor and Detective J. McGrew who provided me with a brief verbal situation report and tour of the scene.

Detective McGrew was on scene leading the investigation and advised the following:  The deceased, Brian Petersen, was arrested recently for Online Solicitation of a Minor via an ICAC (Internet Crimes Against Children) sting. Petersen was last seen by a neighbor on 8-4-2019 carrying gas cans.  Friends and family have sent the Conroe Police Department to this location on multiple attempts to check the welfare of Petersen, because they had not heard from him. On this date, his parents flew in from California because they were concerned and worried about the welfare of Petersen.  Officers arrived and forced entry through the backdoor of the residence as the residence was all locked up and secure.  Officers also made forced entry into an upstairs bedroom that was locked.  Petersen was located deceased in the closet of the bedroom.

I utilized my department issued Nikon D7200 digital camera to photograph the scene.  I observed the residence to be a two-story house.  The house was neat and orderly.  I located Petersen in the upstairs master bedroom closet. This room did not match the rest of the house because there was clutter on the bed and on the floor.  The bed contained a new box that was open that originally contained a 150BT Husqvarna backpack blower, various pieces of gutter/rain pipe, and clothes.  When you first walk into the bedroom a small table was placed with five sheets of paper and a pen.  These sheets of paper were what appeared to be a suicide note.  On the bathroom area floor, leading to the closet, I observed multiple rolls of Seran/plastic wrap.

In front of the closet, I observed what appeared to be a brand new Craftsman 2500 Watt portable generator.  The closet opening was covered in a thick plastic sheeting.  This sheeting was secured up with duct tape and later observed that it was also held from the inside with staples.  Near the bottom of this sheeting there was a hole cut.  There was a small piece of gutter/rain pipe that fed through the sheeting into the closet on one end and on the other end it was attached to the exhaust portion of the portable generator.  Inside the closet, I observed Petersen lying on his back on some pillows.  I observed the backpack blower and a gas can that also appeared new.  On a shelf in the closet, I observed a stapler, a bottle of Unisom sleep aide and a bottle of Nyquil.

I observed Petersen to be lying on the floor, on his back and in his underwear.  I observed multiple pillows around him.  I observed multiple parts of his body to have a reddish color.  The ends of Petersen's toes and fingers were extremely discolored.  There was foam coming out of Petersen's mouth. Petersen was wearing a pair of hearing protection on his ears.

I observed a small trashcan next to the bed.  Inside the trash can, I observed a large amount of Seran/plastic wrap that had masking tape attached. This wrap was a lot thinner than the plastic that was hanging up in the closet. This plastic was all wadded up in the trashcan.  I also observed a note in the trash can that had a list of items with check marks beside each such as staple gun, high heat duct tape and plastic drop cloth.  I observed multiple receipts in the trash can as well:  Conroe Chevron dated 8-4-2019 at 10:13 am for

gasoline and Lowe's in Conroe dated 8-4-2019 for a list of items that were observed in the room such as: Husq 2 cycle backpack blower, duct tape, the thick plastic, gas can, hammer tacker, pvc, etc.  I also observed the packaging for the ear protection he was wearing.

Justice of the Peace Wayne Mack was contacted.  Mack ordered an autopsy to be performed.  Eickenhorst funeral home later arrived to retrieve the body.  The body was eventually released after affixing CPD evidence/body tag #00002111. When the body was rolled over, I observed lividity and blanching that were consistent with Petersen dying in the position he was found.  I also observed more red discoloration on his skin.  After the body was removed, I photographed the area underneath.

Due to the online solicitation of a minor charge against Petersen, I removed a hard drive from his tower desktop computer (#135372), an Apple All-In-One computer (#135374) and the 5 pages of suicide note (#135371).

All items of evidence were transported to the Conroe Police Department and released to an evidence intake locker.  All digital images were uploaded into Spillman.  The forensic center was emailed and notified of the deceased and the photographs would be transported to the center prior to the autopsy the following day.

END OF REPORT.

Case 4:20-cv-04243   Document 40-2   Filed on 07/31/21 in TXSD   Page 43 of 50

## Supplement

VIDEO EVIDENCE REQUEST

I am requesting video from the Chevron at 1405 N. Loop 336 and the Lowes at 1920
Westview containing the purchases related to reciepts depicted in evidence photo
DSC_0934 be added to this case file.

Detective Joe McGrew

## Name Involvements:

**Witness :** 67842
    **Last:** JONES          **First:** TRACY         **Mid:** H
    **DOB:** 05/25/61      **Dr Lic:** 05318909    **Address:** 303 OXFORD DR
    **Race:** W     **Sex:** F    **Phone:** (936)441-3741    **City:** Conroe, TX 77303

**Witness :** 428352
    **Last:** PETERSEN    **First:** DOUGLAS    **Mid:** ARTHUR
    **DOB:** 08/11/47      **Dr Lic:**    **Address:** 1642 W PROSPERITY AVE
    **Race:** W     **Sex:** M    **Phone:**    **City:** TULARE, CA

**Deceased :** 283086
    **Last:** PETERSEN    **First:** BRIAN    **Mid:** SCOTT
    **DOB:** 11/29/79      **Dr Lic:** 33585586    **Address:** 305 OXFORD DR
    **Race:** W     **Sex:** M    **Phone:** (818)519-0441    **City:** Conroe, TX 77301

**Witness :** 335431
    **Last:** ADAMS    **First:** ANDREW    **Mid:** JOEL
    **DOB:** 12/30/80      **Dr Lic:** 34013245    **Address:** 12354 RIDGECREST DR
    **Race:** W     **Sex:** M    **Phone:** (713)416-3019    **City:** Conroe, TX 77318

Cause No: __19080223__

STATE OF TEXAS  : IN THE MUNICIPAL COURT OF THE CITY OF CONROE,
    VS.  : MONTGOMERY COUNTY, TEXAS
DOA

## MOTION FOR DESTRUCTION OR FORFEITURE OF EVIDENCE

TO THE HONORABLE JUDGE OF SAID COURT;

    Comes now, Jillienne Love, Evidence Technician, with the City of Conroe Police Department, and files this motion and would show the Court the following:

I.

    The City of Conroe Police Department has in its possession: *SEE ATTACHED LIST from* a case that has been closed and ruled as a suicide with no pending information from the medical examiner's office. The property is no longer needed as evidence and no criminal case is pending.

II.

    The agency is in need of additional room in its evidence locker, and therefore, the State requests this Court to grant said Motion to dispose of property.

Dated this __07__ day of __August__ 20 _20_

_____
Conroe Police Department – Jillienne Love
2300 Plantation Drive, Conroe, TX 77303

## DISPOSITION ORDER

HAVING HEARD THE FOREGOING, the motion as prayed is GRANTED, and the above described property is hereby ordered delivered in the possession and control of the **CONROE POLICE DEPARTMENT** for DESTRUCTION or FORFEITURE.

Signed and entered this _____ day of _____ , 20____

_____
Magistrate Presiding
City of Conroe Municipal Court,
Montgomery County, Texas

Possession and control of said property is transferred to the CITY OF CONROE POLICE DEPARTMENT for DESTRUCTION or FORFEITURE on this the _____ day of _____ , 20____

_____
Received by

_____
Witnessed by

```
08/08/19                    Conroe Police Department                        715
14:21                    Release of Evidence Property            Page:        1

  Time/Date: Thu, Aug 8 14:13:08 2019

  I, Manderano, M, certify that on the above date and time, the following
  evidence property was released to: Det. McGrew

    ID Number Description                    Incident# Seg Quanity      Ms
  --------- ---------------------------    --------- --- ------------  --
    135372  2.5" SATA 6Gb/s SSD SP550        19080223   1     1.000 DU
    135374  Apple All-In-One Desktop         19080223   2     1.000 DU

  _____                _____
  Custodian                                  Released To
```

08/07/20                    Conroe Police Department                          4052
08:32                     Master evidence property table                 Page:    1

BY LOCATION NUMBER:

| Record nu | Incident | Rec | Sta | Property/Invl Description | Current Locatio |
|-----------|----------|-----|-----|--------------------------|-----------------|
| 135591    | 19080223 | EVI | ORD | dvd lowes surveillance   | RS RW 1 SHLF 4  |
| 135371    | 19080223 | EVI | ORD | Suicide Note (5 pages)   | SM RW 6 SHLF 14 |

| Description | Number | Transaction Date | Sta | Tran |
|---|---|---|---|---|
| Apple All-In-One Desktop | 135374 | 14:13:08 08/08/19 | REL | ROF |
| | | 10:02:54 08/07/19 | ACT | INVN |
| 2.5" SATA 6Gb/s SSD SP550 | 135372 | Transaction Date | Sta | Tran |
| | | 14:13:08 08/08/19 | REL | ROF |
| | | 10:02:54 08/07/19 | ACT | INVN |
| dvd lowes surveillance | 135591 | Transaction Date | Sta | Tran |
| | | 09:13:46 08/13/20 | DES | DEST |
| | | 08:56:12 08/21/19 | ORD | INVN |
| | | 08:56:12 08/21/19 | ACT | INVN |
| Suicide Note (5 pages) | 135371 | Transaction Date | Sta | Tran |
| | | 09:13:46 08/13/20 | DES | DEST |
| | | 14:14:30 08/08/19 | ORD | TRAN |
| | | 14:14:30 08/08/19 | ACT | TRAN |
| | | 14:14:30 08/08/19 | ACT | TRAN |
| | | 10:02:54 08/07/19 | ACT | INVN |

| Location | Officer | Custodian |
|---|---|---|
| RELEASED | Det. McGrew | Manderano, M |
| INTAKE LOCKERS | | Cook, S |

| Location | Officer | Custodian |
|---|---|---|
| RELEASED | Det. McGrew | Manderano, M |
| INTAKE LOCKERS | | Cook, S |

| Location | Officer | Custodian |
|---|---|---|
| DESTROYED | | Love, J |
| RS RW 1 SHLF 4 | Colbert, J | Love, J |
| RS RW 1 SHLF 4 | Colbert, J | Love, J |

| Location | Officer | Custodian |
|---|---|---|
| DESTROYED | | Love, J |
| SM RW 6 SHLF 14 | | Manderano, M |
| SM RW 6 SHLF 14 | | Manderano, M |
| SM RW 6 SHLF 3 | | Manderano, M |
| INTAKE LOCKERS | | Cook, S |